I'm Daniel Lowe on behalf of plaintiff appellant Rajaram. I'd like to reserve four minutes for rebuttal. This case presents a legal question of statutory interpretation involving plain statutory language and an accompanying Supreme Court decision construing the same language of the statute. The language is unambiguous and because of that it is unnecessary and inappropriate. to rely on legislative history to interpret the statute. There are at least five reasons that the statute is unambiguous in protecting U.S. citizens from citizenship discrimination. First, section 1981 provides that all persons have the same right to make and enforce contracts as is enjoyed by white citizens. The phrase all persons could not be more broad and necessarily includes U.S. citizens. Nowhere in the statute do the words non-citizen or alien appear. Right, but your client does have the same right to make and enforce contracts as is enjoyed by white citizens, right? So your objection is that he, you know, non-citizens have a more textual argument that, you know, the statute is being complied with, right? Because, you know, he comes within the meaning of all persons, but he can't say that he doesn't have the same right as those white citizens, can he? He certainly can, and if you look at the McDonald decision, they construed the equivalent language in addressing race relations or racial discrimination where McDonald court found that the provision protecting from discrimination applied to protect whites from racial discrimination in favor of non-whites. That's not a plain words argument. It seems to me that neither side can do very well with a plain words argument in this case. Mainly was relying on the history of the statute Tory evolution, not partly, a little bit on legislative history of what people said, but more than that on the evolution of the history of the statute, which clearly was race neutral at the beginning because it said every citizen, no matter race or color or whatever. And in fact, it originally did not even have the assets enjoyed by white citizens. And that was added in the Senate. So the history, if it seems to claim me to show that the 1866 statute was meant to apply without regard to whether it was a white or a black person or someone else claiming under it. And that the 1970 statute was specifically not intended to change it. So there was a history specific to the race issue, which doesn't apply here. Is that right? There is a slightly different history for the 1870 act, certainly your honor, but the McDonald court also did rely partly on the statutory text and structure as it's stated in his opinion and said that it was confirmed by the legislative history. So I have a different question about, which is kind of a plain words argument about the statute. And that is that, as I understand it, the complaint here is that the, your client was not treated the same as a person who was a, an undocumented or a documented person, but not a citizen. So literally speaking, all persons within the jurisdiction of the United States shall have the same right. And in fact, what happened here was that non-citizens had better rights. I mean, there's a statute doesn't say whether there are better rights or worse rights. It says it has to be the same, right? So the problem is that the non-citizens had better rights than white citizens. That's a statement of principle. It doesn't tell you who can bring the lawsuit, but as to whether the statement here, that, that all persons, that, that non-citizens have to have, can't have better rights than white citizens. That statute seems to say that quite directly. Do you understand what I'm saying? Yeah. And the McDonald court recognized that. I'm not talking McDonald now. I'm talking to the statute as written. As written, yes, but the McDonnell court expressly addressed that language. Well, I, this is an argument that favors you. So you might listen to it a little harder. Okay. All right. So point that favors you. All right. Which is that everybody seems to be but I don't know that that's necessarily the case. This is a statement of principle that says that all persons are to be treated the same as is enjoyed by white citizens. And your complaint is that some people, i.e. the Indian HB1 visas were treated better than people who enjoyed than white citizens. So all persons were not treated the same. That's right. Right. Yes. And the Safeway court pointed out that the white citizens was the benchmark against which all rights were judged and that all persons should have those same rights as the benchmark and that they should not be treated better or worse. And your complaint is that some persons are being treated better than white citizens. Correct. Yes. And the statute says that all persons are supposed to be treated the same. Right. As white citizens. Based on citizenship. Yes. What's your answer to the argument that, you know, in the 1870 Act, this language was in section 16 and then section 17, the criminal penalties for violations of section 16 applied, you know, to punish deprivations of the right guaranteed in section 16, you know, by reason of color or race, which is sort of symmetrical, or on account of such person being an alien, which appears to apply in only one direction. And so, you know, the two provisions should be read in pari materia. And that's, you know, suggests that the sort of symmetry identified in McDonald's with respect to race maybe doesn't apply with respect to alien intercitizenship. How do you answer that? I think it's quite the opposite that it shows that when Congress intended to limit protections to aliens, it knew how to do so. And specified as such in section 17, but not in section 16. Right. Is there any conceivable theory of why they would have wanted the 17 criminal prohibition to be different from the 16 right? Well, if you look at section 17, the first part applies the same protections. And then it's just the second part related to different punishment pains or penalties on account of such person being an alien. And it's not clear from legislative history why that was, but presumably it's because no legislature was going to have higher penalties on citizens or they didn't anticipate as such. Yeah, going back to the statutory text, the McDonald's court construed the phrase as enjoyed by white citizens and found that that emphasized the nature of the rights being protected. Well, it said the racial nature, so that doesn't help you very much. It did say the racial nature, but it certainly can be applied to the word citizen. I mean, there the court was construing the word white. That's fine. It applies to the racial nature of the rights being protected. And the parallel reading of the word citizen is that it emphasizes the citizenship nature of the rights being protected. And if the court had intended to limit the protections of section 1981 to aliens or non-citizens, it could be easily done so by saying that aliens still have the same rights as non-citizens, still have the same rights as citizens, but did not do so. The Supreme Court in the Bostock case examined a similar statutory interpretation situation and stated there's no canon of donut holes, that when a statute protects a broad category, a failure to explicitly reference one group within that category does not create a tacit exception. And here, the reference to all persons is the broad category and the failure to explicitly reference U.S. citizens does not create a tacit exception based on that canon or absence thereof. Looking at the case law, there's only one case that grounds its decision in the statutory language at issue, which was the Jimenez case, which found that U.S. citizens are protected from citizenship discrimination. I will reserve the remainder of my time for rebuttal. Thank you. Great. Thank you. And Ms. Goldman? Yes, Your Honor. I want to respond, I want to start by responding to some of the questions the court presented to Mr. Lowe. The language of the statute is tricky because this is a very old statute, and so consistently in construing it, the courts have looked at, Judge Berzon is correct, have looked at the way in which that language evolved, and they have looked very extensively at the legislative history. So the statute started out as the 1866 Act, right? And what Congress was doing in the 1866 Act was it was making freed slaves into citizens, and then said all citizens shall enjoy the same rights as white citizens. So there was a symmetry there, because what the court was trying, what Congress was trying to do was to ensure that newly freed slaves, who are now citizens, would have the same rights as white citizens. The 1870 Act, as the court noted, Donald concluded that it ran in the other direction as well, and the original statute was very clear about that, because it said all persons, all citizens of every race or color, and the legislative history from the 1866 Act was very clear about the fact that there was a, that it applied to white people as well. So we have much more data with regard to the race issue than we do on the citizenship issue. That's exactly right, Your Honor, and that's dispositive here. So what the court did in McDonald was it went through every last scrap of the legislative history of the 1866 Act, and said over and over again, the members of Congress who were talking about this statute recognized that it was intended to apply equally to people of all races, that people of all races could bring claims under the statute. There is nothing in the legislative history of the 1870 Act, which was intended to protect immigrants. So that, the 1870 Act made clear that all persons within the jurisdiction of the United States could bring claims under the statute. But the question is what they can. Could you address my, my reading, suggested reading, that the statute does not say anything about who can bring a lawsuit. That's not what it's addressing. It's addressing a principle. It just, everybody is assuming that the all persons are the person who can bring the case, but it doesn't say that. So if you read it literally as a principle, the, but it says that all persons within the jurisdictions who have the same right, i.e. not a better right and not a worse right. And so if some of these persons, i.e. these Indian immigrants with HB1 visas, non-citizens, have better rights, that violates the plain text of the statute. Better rights for white citizens. Doesn't it? It does not, Your Honor. Because what, because what the statute does is it says all persons can bring suits. It doesn't say that. It says all persons within the jurisdiction of the United States shall have the same right in every state or territory to make and enforce contracts, as is enjoyed by white citizens. It says nothing about who can bring suit. Right. But the question is, who's a protected class under the statute? Because the courts have been very, very clear, considering all of the anti-discrimination statutes, that you have to look at who's a protected class. And what the aliens under this statute. And they're not. Because you have to look at the structure and the evolution of the statute. There is nothing in the history. Right. But I mean, I take your point on the history. But I have the same question, Judge, as Judge Berzon about the text, which is, I mean, there does seem to be a fairly straightforward textual argument that the same means the same, right? I mean, if you want to read the same as, you know, at least as which, which would seem to track what Congress had in mind, but the words they use are the same. And if, you know, if A is the same as B, then B is the same as A. And the allegation in the complaint is that all persons do not, in fact, have the same rights to contract, as is enjoyed by white citizens, because the H-1B visa holders have a more favorable right. And so I guess maybe where I'm going with this is for you to prevail, you need us to do something other than follow that plain textual reading, don't you? Well, yes, Your Honor. Well, no, actually, no, I don't. Because you still have to consider the structure of the statute and what the statute was intended to do. Because what the plaintiff is asking you to do here is to find a new right that nobody has ever found before in a statute that's been around since 1870. So if you look at the text of the statute, race and citizenship are not the same thing. So the statute doesn't sort of set up an anti-discrimination model the way that Mr. Lowe is arguing it does. What it does is it says all persons shall enjoy the same rights as white citizens. Whites means all races. And citizens means citizens. Citizens doesn't mean that aliens can't be given privileges that aren't given to citizens. That's just not in the structure of the statute. And in fact, Congress said when it was passing the Immigration Reform and Control Act that the reason it was doing that was that no statute on the books prevented discrimination in employment on the basis of U.S. citizenship. And this court said the same thing. And of course, they were wrong about that because the statute does provide in one direction, at least by your understanding, protection from of aliens from citizenship discrimination. So they, for whatever reason, were not clear on that point. Well, there's a difference. I'm sorry, Your Honor. I didn't mean to interrupt you. No, go ahead. There's a difference between discrimination on the basis of alienage, which is what this court found was protected in Sagana, and discrimination on the basis of U.S. legislature and Congress in 1988 seemed to say that there was no coverage in either direction, and they were wrong about that. No, well, it didn't say quite that. It said there was no cause of action for discrimination on the basis of U.S. citizenship, and it said it wasn't clear, which it wasn't in 1985. They said it wasn't clear whether there was a cause of action for alienage. That cause of action wasn't recognized until 1998 when the Second Circuit decided Anderson. So, I mean, even so, I mean, I guess that's, you know, the views of Congress on the question of, you know, what is the state of the law in the 1980s or, you know, maybe entitled, maybe entitled to some respect, but still, you know, Congress in the 1980s cannot dictate what the statute passed in the 1860s and 1870s means, can it? Well, you're looking at 150 years of interpreting the statute and finding that it allows all persons to sue over race discrimination and permits aliens to sue over alienage, but there's nobody ever saying that it permits U.S. citizens to say that they were treated worse than aliens. That right is found in the Immigration Reform and Control Act, which Congress enacted because there was no cause of action for U.S. citizens to claim discrimination on the basis of their citizenship anywhere else in federal law. Well, actually, they were much more motivated by the fact that they thought there was no alienage coverage. I mean, that was really the concern, the white citizen, the white people, the citizens complaining about preferences of aliens, you know, may have gone along with it, but that wasn't what the concern was that was motivating the 1988 statute. Well, it was part of the concern. It was a very minor part of the concern. Okay, Your Honor, but this court said the same thing in 1995, when it decided general dynamics, and it explained the IRCA statutory scheme. And it said that that statute came into play, because it created a cause of action that was not otherwise covered in federal anti-discrimination laws. Now, the issue here is that Mr. Lowe is assuming... I mean, the actual problem here is that the 1988 Act didn't exactly create a cause of action. It was all an administrative action. And that's why these people, I mean, MEDA has, in fact, been found to have done exactly what is being alleged here, but in an administrative proceeding in which they were fined, as I understand it. Not quite, Your Honor. MEDA settled with DOJ DOJ has a proceeding, but there is not a private action for damages. Is that right? Right. But when Congress creates an administrative scheme and an administrative remedy, and does not create a private right of action, that's the whole reason for the court not to imply one in a statute that's been on the books for 150 years. I'd like to go back to my principle. Title VII, if you read it, reads the same way. It shall be an unlawful employment practice for an employer to fail or refuse to hire or discharge any individual or otherwise because of such individual's race, color, religion, or national origin. It's a two-way street, and it doesn't tell you who's bringing the lawsuit. This one doesn't either, as written. Well, no. This statute is structured very, very differently from Title VII and other modern anti-discrimination statutes. Yes, in any way. But as to this point, whether this is a declaration of a principle, a rule of non-discrimination that runs in both directions, which it appears to be because it says it's supposed to be the same, then it seems to me it is structured similarly. And it isn't structured according to who is bringing. Somebody has to be injured to bring a lawsuit to complain about this. These people say they're injured because they say they were not treated the same, and they were treated worse. But it's not telling you. It isn't defining in any way that one can see in the statute that these all persons have to be the people who are treated worse instead of the people who are treated better. Well, but a statute isn't just a raw principle. I mean, a statute, courts have focused consistently in considering this statute in particular on who can sue and what they can sue for. And they have said, for example, that Section 1981 does not protect against discrimination on the basis of national origin. So what the Fifth Circuit said in the Chaffetz case is that there is no distinction between a claim of discrimination based on citizenship and discrimination on the basis of national origin. If you were born here, which this plaintiff was not, but if you are born here, you can't bring a claim under Section 1981 saying I was discriminated against because I am from here, which is indistinguishable from a claim. It's not indistinguishable. It's very much distinguishable because the statute covers citizenship, but it doesn't cover nationality in terms of indistinguishable. The statute says all persons shall enjoy the same right to contract as white citizens. It's not the same as Title VII, which makes it unlawful to discriminate, for example, because of sex. You know, that's very clear. If the statute said it was unlawful to discriminate because of alienage or because of citizenship, we might be having a different discussion. What it says, because it's so antiquated, is that all persons shall have the same right as white citizens. So it's not just creating a two-way ratchet in the way that Mr. Lowe is asking the court to adopt. Title VII is different. Sorry. So creating a principle, like on this, what we were calling the reading of it, that it's a principle that all persons shall have the same right to contract as enjoyed by white citizens. That reading, if you were to read it to say that that sets a baseline, what would you do with that? In other words, everybody has a right to be treated the same way as a white citizen would be, but would that necessarily follow from that that nobody can be treated better? I guess that's it. I'm still trying to figure out, if we were to read it in the way my two colleagues have mentioned, trying to figure out what comes from that. Because when people have a right to something, oftentimes other people get treated better. The right usually prevents you from being treated worse than whatever you have a right to. So I'm trying to figure out what comes of that. In other words, I'm not sure that actually creates a two-way that you have to pull people that are being treated better down, even if you read it that way. That's correct, Your Honor. It does not create that two-way symmetry. It's just not written in a symmetrical way. It's saying that all So in theory, a citizen couldn't be treated worse than the average citizen gets, I guess, or whatever that baseline is. And a non-citizen couldn't be treated worse either. But that wouldn't prevent somebody from being treated better, I guess. You'd have to figure out what that baseline is, and then people could be treated better by a company, I guess, I think, under that reading. I'm not entirely sure I follow. But I think what the Court is saying is that white citizens forms a baseline. But then how do you make sense of McDonald? I mean, you've pointed out correctly that there is a good deal of discussion of legislative history in McDonald. But McDonald also said that its reading of the statute was based on the text. And I don't understand textually how you account for the results in McDonald. How I account for the... Yeah, I mean, the way you want us to read the text, how does McDonald make any sense? Well, McDonald makes sense because the Court said any ambiguity is resolved by looking at legislative history, which it then goes to for 10 pages. But they said that after, I mean, after they said that they thought it was the better reading of the they were wrong about the text, but right about the legislative history. Not exactly, Your Honor. What they said was that the text was ambiguous, and you had to look at the history, which every Court, I mean, no Court has ever found a right under Section 1981 that was not rooted in the evolution of the language and the legislative history. Never. I mean, there's no case. Every single case... By the way, go ahead. There was one comment during the legislative history with regard to the 1870 Act, where a legislator said something like adding this, all persons, and it was clearly to reach aliens. I mean, that you'll agree with. They were clearly trying to protect aliens. Yes, the purpose of the 1870 Act was... And then he says, but we, and for example, we don't want aliens from Prussia being treated better than aliens from, I forget what he said, but let's say, Greece. And that would suggest, again, a flat principle that, because in that instance, he wasn't saying that they were treating aliens better than citizens. He was showing some aliens better than other aliens. So in other words, it was based on what they were, where they were citizens of, but not that they were being treated better than aliens in general. So that's the one place that I found that there was some understanding different from what you're seeing at the time. I understand that that kind of legislator, his history of one person saying something is not all that favored these days, but nonetheless, there does seem to have been somebody who understood it as running that way. I will go back to what the court... I mean, that was one straight comment, and it didn't suggest anything about protecting United States citizens. There's literally nothing in the history or the structure of the 1870 Act about protecting US citizens. But I want to go back to what the court was asking about section 17 of the 1870 Act, because I think that's very important. The plaintiff argues in his reply brief, he makes an argument about the classic case, and he says that it was construing section 16. It wasn't. That court was construing a different provision, section 19. This court needs to look at 16 and 17, because this court held in the Utherson case, United States v. Utherson, 637 of second 1276, that 16 and 17 need to be read that what the statute means is you can't impose a greater punishment because of either of two protected characteristics. One is race, and the other is alien status. Neither is citizenship. So section 17 specifically refers to alien status, which is what section 16 and what now the 1981 Act is all about. It's about protecting aliens against discrimination on the basis of being aliens. If every statute had this reverse discrimination built in, then a statute that said pregnant people have to be treated the same as non-pregnant people would have to be read to protect non-pregnant people. A statute that says that you can't discriminate against old people would mean that you couldn't treat old people better than young people. There is a case about that, as I'm sure you know. General Dynamics Land Systems, about the ADEA, and the wording is different, right? So the wording of the statutes matters, right? And there it was, the statutory prohibition was against discrimination because of an individual's age. And, you know, that, the court said, well, you could read that to mean, you know, age could mean, you know, how old is a person, or it could mean, you know, the condition of being old. And they said, you know, we're going with the second. But, and there was a definition in the statute about that. Right. But, you know, this is a statute that doesn't say discrimination on account of, you know, some particular characteristic. It says, you have to be treated the same, right? So the difference in wording matters, doesn't it? The difference in wording actually, I think, cuts in our favor here, right? Because if you said you can't discriminate, otherwise, that's what makes this case different from Bostock. Bostock said, because of sex means because of sex. So discrimination against people on the basis of their transgender status or their sexual orientation is discrimination because of sex. This statute doesn't say because of citizenship, right? It says, all citizens should, all persons should enjoy the same rights as white citizens. So that's sufficiently unclear that you have to look at what this statute has always been held to protect. Can I ask you one, go back to McDonald just once more. So the, you know, the court said, our examination of the language and history of 1981 convinces us that 1981 is applicable to racial discrimination in private employment against white persons. Then the next paragraph, we cannot accept the view that the terms of 1981 exclude its application to racial discrimination against white persons. And they go through that for a couple more sentences and then say, you know, whatever ambiguity there may be in the language is clarified by the legislative history. And they talk about the legislative history, but it seems like your argument is that the terms of 1981 do exclude it. I mean, if we take the logic of your argument and apply it to the racial context, you would be saying that the terms of 1981 do exclude its application to racial discrimination against white persons, wouldn't you? No, I would say that the court found it necessary to examine the history of the statute and what it was intended to protect. And the court wouldn't have found it necessary to do that had the court believed that it just created a two-way ratchet as to race and citizenship. It just doesn't. And that's why the court went through this exhaustive discussion of the history, which this court did in Saginaw, which the Supreme Court did in St. Francis. You know, all of these cases, including cases in the 2000s, all went through this exhaustive analysis of what the statute was enacted to do and what the 1866 Act was enacted to protect all races. Nobody can really argue with that. The 1870 Act was not. The 1870 Act was enacted to give the protections of the 1866 Act to aliens. That was the purpose of that statute. And that is undisputed. I mean, Mr. Lowe doesn't really dispute that. So the court, it would have just been surplusage for the court to go on about the structure and history of the statute if it thought the language was dispositive. Except that this was an opinion written quite a long time ago when the notion that one has to stick to the language and nothing else was not prevalent. And the notion instead was that you looked at everything available. So the fact that the statute was viewed as sufficiently clear didn't mean that there wasn't a belt and suspenders approach to proving it up. Well, we would submit that every case that has found any sort of right in Section 1981 has grounded that in the history. That there are no cases saying that this is just clear, ordinary, modern statutory language, and it's just obvious. Thank you, Ms. Goldman. Thank you, Your Honor. Mr. Lowe, you have about four minutes. The main purpose of the statute when it was passed was to protect Chinese aliens. Courts have repeatedly found that the main purpose of legislation is not what governs, it is rather the text of the statute, and here the text is much broader. Significantly, in McDonald, the court recognized the immediate impetus of the statute was to protect freed slaves, but it had no problem recognizing that it applied to all races. Here, there's nothing in the legislative history indicating that Congress intended for the statute to only apply to aliens, and there's language recognizing that Congress intended to provide equal protection to all persons. In the Boothstock Supreme Court case, the court stated that it was irrelevant whether Congress had anticipated a particular application of a statute when it was passing the law. In that case, it involved the protection of gay and transgender employees who were not the primary focus of the statute, but were encompassed within the protections of the law. I'm not trying to argue that the statute has been consistently interpreted as not protecting U.S. citizens, but there has not been a great deal of case law on the issue. There are two holdings supporting the application to U.S. citizens, the Jiménez and Hernández decisions, and most of the cases cited by NEDA are either factually not on point or are dicta, with the exception of Chaffetz and Mayenhofer, neither of which ground their decisions in the text of the statute. Chaffetz relied on the plaintiff's argument that he was bringing a alienage, which is not anywhere in the statute, and the Mayenhofer report relied on what Second Circuit precedent had previously found. There were three cases cited where the allegedly favored class was U.S. citizens, and the plaintiffs were also U.S. citizens. So, as a factual matter, those plaintiffs could not bring citizenship discrimination claims, and those were the Jatoy, Mack, and Vaughn cases. So, the suggestion in the brief that Monesen requires an interpretation based on an acquiescence by Congress and interpretation by the courts, it doesn't make sense just because there's only a couple courts that have addressed the issue, only one circuit court, and never the Supreme Court. Looking at the statutory text, if it is viewed as a declaration of rights rather than a statement of who can bring suit under the statute, one point to note is that there's no limitation in the statute on who can bring suit, or the alternative interpretation would be that all persons are entitled to bring suit, one or the other. That's all, Your Honor. Thank you. Thank you, counsel. We thank both counsel for their arguments and wish you a good evening in the Eastern Time Zone on the cases submitted, and we are adjourned. Thank you, Your Honor.
judges: BERZON, MILLER, VANDYKE